OPINION OF THE COURT
Bentley Kassal, J.
In this medical malpractice action, plaintiff’s attorney objected to that portion of the jury charge which expressly related the standard for medical care to that of the locality in which the defendant doctors practiced. In support of his position, plaintiff’s attorney asserted that this test has been universally abandoned. A review of the authority on this subject indicates that such a position is, at the least, an overstatement and inaccurate.
Indeed, the locality rule has been criticized by some commentators and rejected in several jurisdictions. (See, e.g., 1 Louisell & Williams, Medical Malpractice, par 8.06, pp 210-213; Brune v Belinkoff, 354 Mass 102; Pederson v Dumouchel, 72 Wn 2d 73.) However, in this State it has fared far better. The New York locality rule, as clearly stated in Pike v Honsinger (155 NY 201) and restated in Toth v Community Hosp. at Glen Cove (22 NY2d 255) does not appear to have been rejected by any of our appellate authorities.
*656 I have also located one Court of Claims decision, Hirschberg v State of New York (91 Misc 2d 590), which did not negate its continued application but did call for the expansion of the geographic area used to measure the standard of care. (In that case [supra, p 598], in particular, the court merely held that a State hospital, operating in Middle-town, New York, under the State’s uniform regulations and requirements, should be held to a State-wide standard.) However, the locality rule continues to be alive and does appear in statements as the applicable standard in the great majority of appellate and trial court decisions. (See, e.g., Spadaccini v Dolan, 63 AD2d 110, 116-117; Patterson v Jewish Hosp. & Med. Center, 94 Misc 2d 680, affd 65 AD2d 553.)
With the increasing availability of sophisticated medical technology, better communication and the rising standard of medical care, resulting, in part, from rigid licensing standards, continuing professional education requirements and the wide availability of lectures and professional journals, the “community” or “locality” rule for measuring proper medical treatment has lost much of its vitality in terms of strictly local application. (See 1 Louisell & Williams, Medical Malpractice, par 8.06, pp 210-213.)
Historical background is significant. The rule was developed at a time when small-town doctors lacked the advanced equipment only major medical centers could afford and were either not able to take the time to travel to distant locations to learn developing techniques or to become educated via modern training devices.
However, there is still some basis for requiring that the level of proper medical practice be that of the same oi' similar communities. Certainly a doctor in a community without the latest technology, hundreds of miles from a hospital with a CAT scanner, computer or similar equipment could not be expected to provide the same sophisticated diagnostic evaluation obtainable with that equipment. Nor would an ophthalmologist, similarly distant from a laser instrument, be expected to use one in eye surgery. Professional education programs may make a small community practitioner aware of the advancements in his field, *657 but he may not have the time, opportunity or facilities to study and practice such techniques. Nor may his local patients be willing or able to travel to a distant community where such techniques or facilities are available. Thus, to some degree, the standard by which such doctors are measured should reflect the realities of their situations.
If the locality standard was developed to reflect the realities of the small communities, may it also apply to our major metropolitan centers? Since New York City is a major world center, with generally the most advanced medical facilities and a repository of highly trained, experienced well-qualified medical practioners, it is difficult to perceive how a patient could be unfairly prejudiced by holding a doctor to the standard of medical care in such a community (unquestionably one of the highest locality or “community” standards in the world).
Conversely, holding a New York doctor to the standard of practice in a small community would generally be inappropriate, to say the least. It is not too difficult to conceive of a community where the only surgeons practicing have a high fatality rate for open-heart surgery. A family practitioner in such a community might properly consider such surgery to be an undesirable radical procedure to be avoided absent the most compelling circumstances. Yet the same operation may be considered to be commonplace and relatively risk-free in New York. If a New York doctor recommends such surgery and, for whatever reasons, it has bad results, it would be unfair to charge the jury that the New York doctor’s practice should be measured by the small-town expert’s experience.
Under any of these circumstances, the two-part rule established by the Court of Appeals in Toth v Community Hosp. at Glen Cove (22 NY2d 255, supra) demonstrates its continued validity for application. To paraphrase that holding, the level of care provided by doctors in the locality establishes the normal standard for evaluation for a doctor, which is a minimum standard, but a doctor may not surrender his best judgment or special skill, knowledge or training if they are or should be higher than that standard. This rule provides the higher level of protection to the patient *658 without putting the doctor at the mercy of arbitrary standards with no relevance to his practice.
Furthermore, in the instant case, whether or not the locality standard charge was necessary, there is no demonstration that it was unfairly prejudicial to any party in terms of the evidence adduced. Although one of plaintiff’s two cardiology experts was a professor of surgery from Seattle, Washington, he did not testify as to practice in Seattle or New York City, but rather to the national standard. (See Malpractice Testimony: Competency of Physician or Surgeon from One Locality to Testify, in Malpractice Case, As to Standard of Care Required of Defendant Practicing iñ Another Locality, Ann., 37 ALR3d 420.)
Accordingly, the objection by plaintiff’s counsel is overruled.